IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | 3-14CR 003-N |
| v. | § § | |
| TRENT GEORGE | § § | Criminal No. |

## INFORMATION

The United States Attorney for the Northern District of Texas charges:

### Introduction

At all material to this Information:

1. The United States Department of Housing and Urban Development (HUD) is a Cabinet department in the Executive branch of the United States federal government. HUD's mission is to create strong, sustainable, inclusive communities and quality affordable homes for all.

2. The "Housing Choice Voucher Program" is the federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market. This program is managed by HUD.

3. Housing choice vouchers are administered locally by public housing agencies (PHAs). The PHAs receive federal funds from HUD to administer the voucher program.

Information - 1

4. Eligibility for a housing voucher is determined by the PHA based on the applicant's total annual gross income and family size and is limited to U.S. citizens and specified categories of non-citizens who have eligible immigration status.

5. During the application process, the PHA collects information on family income, assets, and family composition. The PHA verifies this information with other local agencies, employers, and banks, and uses the information to determine program eligibility and the amount of the housing assistance payment

6. A family that is issued a housing voucher is responsible for finding a suitable housing unit of the family's choice where the owner of that property agrees to rent under the program. Rental units must meet minimum standards of health and safety, as determined by the PHA.

7. A housing subsidy is paid to the landlord directly by the PHA on behalf of the participating family. The family then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

8. The Rockwall Housing Development Corporation (RHDC) is a landlord to several authorized PHAs in Rockwall, Texas, which is in the Dallas Division of the Northern District of Texas. The RHDC owns and operates a 36-unit apartment complex in Rockwall, Texas, known as "the Meadows." A family that has been issued a housing voucher and wants to live at the Meadows provides their housing voucher to the RHDC.

9. Co-conspirator A was employed as the Executive Director/Manager of the RHDC between January 2010 and November 2012. This position provided her

managerial discretion and responsibility for the day-to-day running of the Meadows. In her role as a director of the RHDC, Co-conspirator A was an agent of the RHDC. Co-conspirator A's responsibilities included, among other things, reviewing and processing monthly housing assistance payments.

10. Co-conspirator B applied for a housing choice voucher in 2001. In early 2002, Co-conspirator B obtained a housing choice voucher and moved into Apartment 785 at the Meadows in Rockwall, Texas. Co-conspirator B remained a resident at the Meadows until January 2011. Co-conspirator B was never formally employed by the Meadows or the RHDC.

11. **George** was Co-conspirator B's fiancé and moved in with Co-conspirator B at the Meadows in 2007.

12. Between in or about January 2010 and continuing thereafter until in or about December 2012, HUD caused approximately $236,611 to be paid to RHDC as rental assistance in regards to various Housing Choice Voucher Program participants living at the Meadows. In any one year period between January 2010 and December 2012, RHDC received benefits under the Housing Choice Voucher Program in excess of $10,000.

## Count One
## Conspiracy to Commit Theft Concerning Programs Receiving Federal Funds
[Violation of 18 U.S.C. § 371 (18 U.S.C. §§ 666(a)(1)(A)]

13. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 12, as if fully set forth herein.

14. Beginning in or about March 2010 and continuing thereafter until in or about October 2012 in the Northern District of Texas, the defendant, **Trent George**, knowingly and willfully conspired and agreed with others known and unknown to the United States Attorney, to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is, to obtain and retain Rockwall Housing Development Corporation property by fraud and to unlawfully and without authority convert said property to the use of a person other than the rightful owner, said property being comprised of funds which had a value of more than $5,000, and which was owned by, and was under the care, custody and control of the Rockwall Housing Development Corporation.

15. At all pertinent times, that is, in any one-year period between March 2010 and October 2012, the Rockwall Housing Development Corporation received benefits in excess of $10,000.00 under the United States Department of Housing and Urban Development Housing Choice Voucher Program, a federal program involving a grant, contract, subsidy, loan guarantee, insurance, or other form of federal assistance.

Information - 4

## OVERT ACTS

16. In executing the above-described conspiracy alleged in Paragraphs Fourteen and Fifteen, one or more of the co-conspirators committed the following overt acts:

 a. Beginning in or about March 2010 and continuing thereafter until in or about June 2011, Co-conspirator A knowingly and intentionally wrote approximately 128 RHDC checks, made out to **George**, for an approximate total of $126,063.00.

 b. Although **George** performed some work for the Meadows, including watering plants and picking up trash, as Co-conspirator A knew, **George** did not earn and was not owed $126,063.00 over the course of less than sixteen months. As Co-conspirator A knew, Co-conspirator A did not have authorization from the RHDC to make the vast majority of these payments to **George**.

 c. In most cases, following his receipt of the checks that were made out to him, **George** knowingly and intentionally visited a local financial institution and cashed the RHDC checks given to him by Co-conspirator A.

 d. **George** knowingly and intentionally returned the vast majority of cash to Co-conspirator A. Co-conspirator A paid **George** a fee for having cashed the checks for her.

 e. In many instances, Co-conspirator A, Co-conspirator B, and **George** knowingly and intentionally utilized the remaining cash to purchase illegal narcotics for

Information - 5

their own personal use. Co-conspirator A did not have authorization from the RHDC to use RHDC funds for such purposes.

f. In or about January 2011, Co-conspirator B was evicted from the Meadows and began living with **George** in hotels in Rockwall, Texas. Co-conspirator B and **George** resided in hotels continuously between on or about January 27, 2011, and on or about May 24, 2011. Co-conspirator A would also occasionally stay in the room reserved for Co-conspirator B and **George**. Co-conspirator A intentionally, and without authorization from the RHDC, paid for these hotel stays using RHDC funds. Co-conspirator A, Co-conspirator B, and **George** often used illegal narcotics in these hotel rooms.

All in violation of 18 U.S.C. § 371 (18 U.S.C. §§ 666(a)(1)(A).)

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov